JAMES MURPHY *et al. vs.* WILLIAM D. BULLOCK *et al.*

PROVIDENCE — APRIL 19, 1897.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

In 1870 the State, being the owner of the "cove lands" in the city of Providence, conveyed them to the city by deed in which the descriptive part contained the words, "now or heretofore flowed by tide-water." A large tract of land had formerly been a part of the cove, and was still called "cove lands," but the tide had ceased to flow thereon because of the filling by the city in 1857 :—

*Held,* that the deed was intended to cover land that was then flowed by the tide, and also land that had been a part of the cove and was still traceable as such and had not been already the subject of legal grant or appropriation, and therefore included the tract of land mentioned.

A riparian owner erected on a part of this land supports for a structure, and the officers and agents of the city removed them ; thereupon he brought his action of trespass :—

*Held,* that under the title given by the deed the city had a right to remove the obstructions.

In cases where an individual interferes with a riparian owner's use of tide flowed lands, such owner may have the right to construct wharves, buildings and other improvements in front of his land if the public use be not impaired thereby ; but that right is not recognized against the State or those who act under its authority.

The rule stated, however, is more applicable to a good sized body of water than to a narrow stream where any occupation of the land must obstruct and deflect the flow of water.

The legislation and litigation relating to the "cove lands" in the city of Providence reviewed.

TRESPASS *quare clausum fregit.* Certified from the Common Pleas Division on waiver of jury trial.

STINESS, J.  The question raised in this case is whether the plaintiffs are the owners by riparian right of the bed of the stream, formerly a part of the Blackstone Canal basin and since called the Moshassuck river, in front of their land on the east side of Canal street.

From the testimony we find that prior to 1823 the land in question was flowed by the tides.  The Moshassuck river then emptied into a salt water cove at some distance above the place, and authority was given by the General Assembly to the Blackstone Canal Company to erect dams and to construct necessary basins.  A dam was built below the place in question and a large area was enclosed for a boat basin, extending up to Mill bridge, and including these premises. This state of affairs continued until January, 1849, when the canal having been superseded by the Providence and Worcester Railroad, the General Assembly authorized the canal company to discontinue its canal and to become discharged of its duty to maintain the same, on condition that the lands covered by it should revert to the owners at the time of the location.  According to this act the land in question reverted to the State, and authority was given, in the same act, to the city of Providence, to maintain the dam, · for the purpose of providing a supply of water for extinguishing fires.  Meanwhile, by acts of October, 1841, and May, 1845, the General Assembly had forbidden encroachment upon the public waters above Weybosset bridge, except under a grant from the city council of Providence for railroad purposes.  The canal company had also conveyed the westerly portion of the basin to the Providence & Worcester Railroad Co.  In connection with the grant to the canal company, Canal street had been laid out along the easterly side of the basin and in front of the plaintiff's estate.  This street and the land occupied by the railroad company on the opposite side made a narrow channel through which the Moshassuck river was brought down to the cove basin subsequently built, and since that time this prolongation has been called the Moshassuck river.  It now appears, however, that at the point in question there is a slight rise and fall of tides.

Under these facts the question comes to whom does the land of the present river bed, or the right to its control, belong? There have been several attempts to settle this question, but a review of the previous litigation shows that it has not been before the court in such a way as to admit of its full decision.

In 1870 the State made a deed to the city of Providence of all right, title and interest, which the State then had "in and to the cove lands, so called, in said city of Providence, being all the lands in said City of Providence now or heretofore flowed by tide water above Weybosset Bridge."

In 1833 the city of Providence brought an action of ejectment against Edwin C. Budlong, who occupied a part of the old State Prison lot, which was claimed to be a part of the "cove lands, so called." This was followed by a suit in equity by the Attorney General, on behalf of the State, against the city, to restrain the suit against Budlong, upon the ground that the deed was not intended to have so broad a scope as was claimed for it, but that it was only intended to convey land to which the city had an equitable claim by previous filling, and that the general description in the deed was a mistake and was used because of the difficulty in describing the land by metes and bounds. The proof showed that the deed did not apply to the case, because the State Prison lot, being upland, was not within the description of "cove lands." The rescript is as follows: "The court are of opinion that the deed from the State to the City mentioned in the bill conveyed simply the 'Cove Lands so called,' and that the Cove Lands so called do not include any portion of the State Prison lot. The words added 'being all the lands in said City of Providence now or heretofore flowed by tide water above Weybosset Bridge in said City of Providence' are merely descriptive and do not enlarge the grant. The mistake, therefore, is a mistake in description. A false description does no harm. It amounts to only *prima facie* evidence.

The defendant, in order to succeed in its suit at law, must show, what upon the evidence before us appears not to have

been the fact, that the ' Cove Lands so called' included the lot in controversy, before it can recover. Bill dismissed."

The question next came up in *Brennan* v. *Viall* (see rescript Law No. 3008, April term, 1887), where the plaintiffs claimed title to a part of the same river bed, as lessees of the city, upon the ground that the town of Providence had acquired title to the tide lands within its limits, under the colonial law of 1707. The rescript of the court was as follows : "The court is of opinion that the plaintiffs have not shown by evidence documentary and other, which they have submitted, that they have or that the city had when they took their conveyance from it, any title to the premises in suit. The court thinks that the act of May 28, 1707 (4 R. I. Col. Rec. 24), referred to by the plaintiffs, did not directly convey to the then town of Providence any property in the coves, creeks, rivers, waters and banks within its borders, but only authority to appropriate them, or portions of them, by building houses, warehouses, wharves, laying out lots, or by other improvements, &c., as the body of freeholders and freemen, or the major part of them, might see fit for their most benefit ; and it does not appear that the premises in suit have ever been so appropriated."

In *Prior* v. *Comstock*, 17 R. I. 1, the railroad company, having interfered with the plaintiff's possession, sought to justify its interference by a vote of the city council, the authority for which was claimed under the acts of 1845 and 1848. The court held that, as the authority given to the city extended only to " land covered by public waters," and as the land in question was at that time enclosed as a canal basin, it could not be presumed to be within the meaning of the acts of the General Assembly which authorized the city to make a grant of them for railroad purposes. It was also held that upon the repeal of the charter of the canal company the land reverted to the State, and, as the State had not intervened, the defendants, servants of the railroad company, had shown no right to interfere with the possession of the plaintiff, even though he might have no title as against the State.

It thus appears that in 1870, when the deed of the State

was given to the city of Providence, the State was the owner of the cove lands, and that the designation applied to lands which could be identified as such. The deed contains the descriptive phrase "now or heretofore flowed by tide water," as explanatory of its meaning.

Land flowed by the tide in 1870 would naturally fall within the designation of cove lands, for that is what the cove originally was. But there was also a large tract of land, which had formerly been a part of the cove, and was still called cove lands, where the tide had ceased to flow because of the filling by the city in 1857, and this was clearly intended to be covered as land which still retained its character and designation. Hence "cove lands," according to the explanation of the deed, was to cover land that was then flowed by the tide and land which had been a part of the cove and was still traceable as such, and which had not been already made the subject of legal grant or appropriation.

The plaintiffs offered testimony from a number of witnesses that they had never known this place to be called "cove lands;" but as the land in question was a part of the old salt cove and is now flowed by the tides, it is clearly within the definition of the deed from the State to the city. In *Prior* v. *Comstock*, it was stated in the agreed statement of facts that the tide had not flowed upon the premises since the building of the canal, but this is now shown to be the other way.

The plaintiffs claim, however, that this place ceased to be public waters when the public rights of navigation and fishing were destroyed by the erection of dams and locks to make the canal basin. It did to a certain extent, but not wholly. The canal use was a public use, and when the charter was repealed the express provision was that the land should revert to the original owners, as it would have done without such a provision. The title of the State was simply relieved of the use granted to the canal company, and the general public use was reinstated.

The plaintiffs further claim that, even if the title be in the city, the riparian owners have the right to construct wharves,

buildings and other improvements in front of their lands, if they do not thereby impair the public use. This rule is recognized in cases where an individual seeks to interfere with the riparian owner's use of tide flowed lands, but it is not recognized against the State or those who act under its authority. *Folsom v. Freeborn*, 13 R. I. 200. It is also a rule which is more applicable to a good sized body of water than to a narrow stream. In this case, for example, it is evident that any occupation of the land itself must obstruct and deflect the flow of the water, and it is also shown that piles, posts and braces, to enclose a space or to support a structure, are serious obstacles in the stream, on account of their holding silt and driftwood and for other causes.

Under the title given by the deed, therefore, to say nothing of the effect of previous acts or of public municipal rights and duties, we think the city had the right to remove the obstruction put upon the premises in question. The case has been elaborately argued, and many questions have been discussed ; but in our opinion the language of the deed applied to the facts in this case is conclusive of the title of the city.

Judgment for the defendants.

*William H. Greene and Patrick J. McCarthy*, for the plaintiffs.

*Francis Colwell, City Solicitor of the City of Providence, and Albert A. Baker, Assistant City Solicitor*, for the defendants.